DEPARTMENT OF THE NAVY
BOARD FOR CORRECTION OF NAVAL RECORDS
2 NAVY ANNEX
WASHINGTON DC 20370-5100

JRE
Docket No. 09117-04
11 April 2006

MR BRYCE F LOCKWOOD
C/O WILLIAM J KENNEY ESQ
9915 EMPIRE WOODS COURT
CHARLOTTE NC 28277-2279

Dear Mr. Lockwood:

This is in reference to your request for further consideration of your application for correction of your naval record pursuant to the provisions of title 10 of the United States Code, section 1552.

A three-member panel of the Board for Correction of Naval Records, sitting in executive session, reconsidered your application on 10 April 2006. Your allegations of error and injustice were reviewed in accordance with administrative regulations and procedures applicable to the proceedings of this Board. Documentary material considered by the Board consisted of your application, together with all material submitted in support thereof, your naval record and applicable statutes, regulations and policies. In addition, the Board considered the advisory opinions furnished by LCDR Matthew F. Carroll, MC, USNR, undated; Major John Stetson, MC, USAF, dated 29 April 2004; and the Director, Naval Council of Personnel Boards (NCPB), dated 26 July 2004. A copy of each opinion is attached.

After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to the existence of probable material error or injustice. In this connection, it substantially concurred with the comments contained in the advisory opinion furnished by Dr. Carroll. The Board concluded that, notwithstanding the comments contained in the advisory opinions from Major Stinson and the

Director, NCPB, as well as those of the expert witnesses you retained, you have not demonstrated that you suffered from posttraumatic stress disorder prior to your discharge from the Marine Corps in 1972. In addition, the Board was not persuaded that you suffered from tinnitus, diplopia, significant hearing loss, anxiety disorder, residuals of a fracture of the zygomatic arch, degenerative arthritis or obsessive compulsive disorder at that time.

As indicated below, the Board found that your contentions of error and/or injustice are controverted by entries in your service record book, naval health record, and Department of Veterans Affairs (VA) claims folder, as well as by statements made by you in your initial application for correction of naval record.

There is no reliable indication in the available records that there was a significant decline in your previously high level of functioning following the 8 June 1967 attack on the USS Liberty (hereinafter "the Liberty"). Your high school and bible college transcripts indicate that prior to enlisting in the Marine Corps, you performed at a level below that expected of an individual with your superior intelligence. You generally performed your duties in an excellent to outstanding manner during your first six years of service in Marine Corps, but your performance declined upon your promotion to sergeant in 1965. Your reporting seniors consistently assessed your general value to the service in that rank as "average" and "above average to excellent". You were rated below numerous other sergeants who were evaluated by your reporting seniors. You were marked down in areas such as handling enlisted personnel, training personnel, force, and leadership. Your performance of duty improved upon your promotion to staff sergeant. Your general value to the service was rated as "above average to excellent" in your initial fitness report in that rank, which covers the 1 October 1966-31 January 1967 period. Your general value to the service was assessed as "excellent" in the next fitness report, which covers the 1 February - 31 July 1967 period, and "excellent to outstanding" in the fitness report covering the period 1 August-27 November 1967, which began approximately eight weeks after the attack on the Liberty. You were rated as one of the two best staff sergeants of the seventeen rated by your reporting senior during that period. In addition, you were selected as the US Naval Security Group Activity, Bremerhaven, Germany, Marine of the Month for October 1967. In the letter notifying you of your selection for that honor, which is attached to the fitness report, you were lauded for "…the

superior quality of your work and your continuous affable attitude and innate desire to excel". In your next fitness report, which covers the 28 November 1967-31 January 1968 period, you were rated as "excellent to outstanding". You were selected from among 700 service members as "Marine/Sailor of the Month" for November 1967. With one exception, your general value to the service was rated as "excellent" or ""excellent to outstanding" until your promotion to gunnery sergeant in 1970. You received a rating of "excellent" in your first fitness report as a gunnery sergeant, which covers the 20 February-31 May 1970 period but your performance declined thereafter, and your general value was rated as "above average" for the remainder of your career. You were marked down in the areas of initiative, force, and judgment in the latter reports. There is no indication in your record that you suffered from an undiagnosed mental disorder during that time, or that the decline in your performance several years after the Liberty attack was related to a mental disorder or the excessive consumption of alcoholic beverages.

You were granted a final Top Secret security clearance on 8 July 1970 based on the favorable results of a background investigation that was completed by the Naval Investigative Service on 30 March 1970. That action militates against a determination that you suffered from significant psychological pathology prior to that time, or used alcohol in a dysfunctional manner.

Your contention that you were severely wounded in the Liberty incident is not supported by the available records. A report of physical examination you underwent on 19 July 1967, as well as the Report of Medical History you completed on that date, do not mention your injuries, or a the presence of burns or scars on your face. An x-ray examination conducted on 21 July 1967 revealed no evidence of opaque bodies, which should have been found had shrapnel been present. A photograph of you dated "August 1967" which is attached to your 4 August 1967 application for a commissioning program, shows no evidence of burns or scarring of your face. It appears that your wife's memory of events which occurred at that time is inaccurate. She alleged in her affidavit in support of your application that your face was so badly burned when you returned home following the Liberty incident, your daughter, "then 3 ½ insisted he was not her daddy. This really hurt Bryce and his self-image." Entries in your service record indicate that neither of your daughters was 3 ½ at that time, and as indicated above, it does not appear that your face was severely burned. The record of

your injury indicates that you received first and second degree "flash burns" and one small shrapnel wound to your forehead, rather than the third degree burns you claimed on at least one occasion to have suffered. When you were examined at a VA facility on 25 October 1972, no abnormalities of the skin, head face or neck were noted, with the exception of "very minute superficial scars and two areas, one on each side of the nose, where there was "minimal induration", i.e., hardening, and "No burns, scars are identified". The Board found it interesting to note that those areas of induration appear to be present in a photograph of you taken in 1959, which is filed in your service record book. The report of the reenlistment physical examination you underwent on 22 May 1968 does not contain any references to wounds, burns or facial scars, and it indicates that no abnormalities were noted during the clinical psychiatric evaluation conducted on that date. A color photograph of you which appears on a Liberty association web-site does not show any scarring of your face.

Your contention concerning the "Silencing Order" that allegedly prevented you from discussing the Liberty incident and seeking psychiatric care for posttraumatic stress disorder while you were on active duty, and for some period of time thereafter, is belied by multiple entries in your service record, as well as information in the sworn affidavit you submitted in support of your initial application. For example, shortly after the attack you submitted a personnel claim for reimbursement of the value of clothing and personnel gear destroyed by "enemy action" on 8 June 1967, when "the USS LIBERTY (AGTR5) was attacked by jet fire and torpedo boats" while the Liberty "was operating in international waters off the coast of Israel." You submitted an Administrative Action (AA) form on 20 October 1967 in which you stated you had received wounds "aboard the USS Liberty on 8 June 1967", and requested "a determination as to my eligibility for award of the Purple Heart". Two follow-up AA forms were submitted on your behalf. There are multiple documents in your file concerning the award of the Purple Heart and Silver Star, as well as correspondence related to your request for monetary compensation from the State of Israel for your injuries. You claim to have received a small amount of compensation from Israel; however, according to a United States Department of State publication, the average amount of compensation paid to the survivors of the Liberty incident was about $20,000, which was a substantial sum of money in 1969.

You stated in pages 10 and 11 of your affidavit in support of your original application that while you were serving in Vietnam

"I spoke to several people about my flashbacks. Frankly, I never let on that the NAM duty was becoming a part of them. I merely described the Liberty part. Among those I talked to was an older Gunnery Sergeant I felt comfortable (safe) with, one of our company corpsman, and, a few fellow Marines." You stated in pages 12 and 13 of that affidavit that "I began talking to my Company Officer. I complained that I should have received a higher award for my actions aboard the Liberty. I acknowledged I was angry with the Corps, the Navy and the Government for having screwed me and the Liberty crew because they were afraid that telling the truth about the Liberty …would cause a public uproar against our policy of continued support of Israel", and that while undergoing disability evaluation "I finally discussed my flashbacks, nightmares and drinking with one of the doctors, and with a JAG officer at Key West. Both advised me that it would not be in my best interests to raise an psychiatric issues because this would kill any chance for post service employment in the civilian world".

Your contention that you abandoned your VA claim in 1972 when VA officials requested access to your military records, because you were concerned that facts of Liberty incident would be exposed, does not appear to be true. A VA rating decision dated 29 December 1972, with allied documents, indicates that the VA obtained your military health record, and that your claim was fully adjudicated. The report of the VA compensation examination you underwent at a VA facility on 25 October 1972 indicates that you had received multiple "tiny" fragment wounds and "superficial burns" of the face in June 1967 "following an aircraft rocket and strafing attack on his ship, the U.S. S. Liberty". The VA awarded you non-compensable disability ratings of 0% for minimal scarring and arthralgia. The VA medical examiner did not find any objective evidence of musculoskeletal abnormalities, ear pathology, or significant hearing loss. It is noteworthy that although you were found unfit to perform your largely administrative and sedentary duties in the Marine Corps, you advised VA rating officials that you had been working as a carpenter since 30 June 1972.

As you know, there is no test that will definitively establish or rule-out a diagnosis of posttraumatic stress disorder. In the typical case seen by the Board, a veteran who has been exposed to extreme trauma, such as you, will be given a diagnosis of posttraumatic stress disorder if the VA mental health professionals who evaluate him believe his representations concerning the characteristic symptoms of that disorder he has experienced. Your representation concerning

your alleged symptoms are not credible. In this regard, the Board noted that in June and July 1997, you had several sessions with a licensed psychologist employed by a private mental health facility to which you had been referred to determine whether or not you suffered from posttraumatic stress disorder. In an early session, you reported that you felt good about yourself, you drank 2-3 beers per week, and that you did not have any family or work problems associated with your use of alcohol. You reported that you had recently been evaluated by a psychiatrist who felt that your condition was depressive in nature rather than posttraumatic. Unfortunately, you did not submit records of that evaluation for the Board's review. A progress note written by the aforementioned psychologist on 3 July 1997 indicates that he told you "there was a piece of the puzzle missing" and that he was left with a feeling of confusion, despite his probing. You "finally allowed the other 'piece'", i.e., that you were seeking "disability coverage" for posttraumatic stress disorder at the recommendation of your attorney. You told the psychologist that you did not suffer the typical symptom of posttraumatic stress disorder of reliving the incident, although your memories remained vivid. You related having a feeling of extreme fear when performing a non-related work task approximately one year earlier, "the genesis of which" you had "absolutely no idea and did not appear to emanate from the shipboard incident." On 30 July 1997, the psychologist advised you that he did not think you met the diagnostic criteria of posttraumatic stress disorder, and that he "would have to testify to same." You terminated your relationship with the psychologist shortly thereafter.

A questionnaire you completed at the beginning of the evaluation process is informative concerning your post-service employment history, and is at variance with the history presented in your application for correction of naval record. You reported that you had been employed in your then current job for five years. You listed five previous employers, to include Exxon Oil, 1976-77; Lawrence Oil Company, 1974-76; American Amicable Life Insurance (AALI), 1974-1984; Big Boy Grain Company, August 1984-December 1985; and Milky Way Transport, July 1990-July 1991. You also reported that you were self-employed from August 1984 to December 1985. Your employment by AALI is somewhat unusual for a person allegedly suffering from posttraumatic stress disorder, because persons with that disorder generally avoid stimuli associated with the precipitating trauma. AALI is a well know purveyor of life insurance to service members undergoing entry level training, and was one of the companies whose sales practices recently prompted Congress to the enact

legislation which restricts the on-base sale of insurance to service members.

The Board rejected you contention to the effect that service medical and physical evaluation officials should have discovered your alleged mental disorders and assigned appropriate disability rating to those conditions. You had a duty to disclose all significant medical and psychological conditions from which you suffered when you completed medical history statements and when you were evaluated by two medical boards and the Physical Evaluation Board. Your failure to disclose any conditions other than those discussed in the medical board amounts to a waiver of your right to disability ratings for any of the alleged condition you failed to report. Physicians and attorneys are not mind readers, and it is not reasonable to presume that those whom you consulted should uncovered any other ratable conditions. Your superiors apparently did not have any reason to believe that you suffered from a mental disorder, or abused alcohol, because if they, they would have suspended or terminated your access to classified defense information, and you certainly would not received a final top secret clearance.

The report of your initial medical board, dated 30 June 1971 indicates that your general health had been good, and that you were in no distress. The results of the x-ray, laboratory and clinical examinations you underwent performed or directed by the board were entirely normal. No evidence of limitation of motion, warmth, tenderness, swelling or synovitis in any of your joints was found, and there was no objective evidence of any impairment of your health or vigor. You were advised of the findings of the medical board on 30 June 1971, and declined to submit a statement in rebuttal thereto. Your second medical board met on 10 April 1972, and reported that you had suffered an episode of meralgia paresthetica which had abated, as well as nd hyperurecemia, which was thought to be related to your use of aspirin. The findings of the medical board were essentially unremarkable, and once again, there was no objective evidence of any impairment of your health or vigor. After being advised of those findings, you declined to submit a statement in rebuttal thereto.

The Board rejected you contention to the effect that you received poor advice from the physicians and the attorney who were involved in your disability evaluation process. It appears that it may have been in your best interest to accept the findings of the Physical Evaluation Board. Had you rejected those findings, and demanded a hearing, the hearing panel may

very well have found you fit for duty, given the purely subjective nature of your complaints, and the absence of persuasive evidence that your ability to perform your regular duties was impaired to a significant degree. The only apparent basis for a finding of unfitness was your subjective inability to engage in physical fitness training. Such a limitation is not generally considered to be a sufficient basis for a finding of unfitness by reason of physical disability. Had you been found fit for duty by a hearing panel, you would have faced the possibility of being discharged administratively without entitlement to any monetary benefits from the Marine Corps. In any event, your prospects for attaining a higher rank were limited, given the less than outstanding fitness reports you received as a gunnery sergeant, and your repeated failures to be selected for a variety of commissioning programs. In addition, the Board concluded that that you may have preferred discharge with entitlement to severance pay to disability retirement for economic reasons. In this regard, it noted that you received a lump sum payment in the amount of $15,000.00 in 1972, whereas you would have received less than $315.00 per month had you been released from active duty and transferred to the Temporary Disability Retired List with a rating of 50%.

As a final matter, the Board noted that you have actively sought benefits from the VA for numerous conditions that have no apparent relationship to your military service, or are not disabling, such as a back condition, neck injury, hearing loss, irritable bowel syndrome, rhinitis, shoulder injury, and residuals of a concussion. In addition, it appears that your subjective complaints of tinnitus, residuals of a fractured zygomatic arch, wound and burn scars, and posttraumatic stress disorder and arthralgia, for which you have received monetary compensation from the VA, are grossly exaggerated.

In view of the foregoing, your application has been denied. The names and votes of the members of the panel will be furnished upon request.

It is regretted that the circumstances of your case are such that favorable action cannot be taken. You are entitled to have the Board reconsider its decision upon submission of new and material evidence or other matter not previously considered by the Board. In this regard, it is important to keep in mind that a presumption of regularity attaches to all official records.

Consequently, when applying for a correction of an official naval record, the burden is on the applicant to demonstrate the existence of probable material error or injustice.

Sincerely,

W. Dean Pfeiffer

W. DEAN PFEIFFER
Executive Director

iv. Criteria D: Increased arousal. Mrs. Lockwood's affidavit seems to clearly indicate a dramatic change in her husband's sleep pattern that is indicative of hyper-arousal. She also notes an increased irritability. He has documented anxiety symptoms from 1972. GySgt Lockwood notes difficulty concentrating. In addition he is noted by Dr. Ochberg to have an exaggerated startle response since 1967. These symptoms more than fulfill Criteria D.

v. Criteria E: Symptoms last more than 30 days. The record suggests that GySgt Lockwood's symptoms began in 1967 and persisted through 2001.

vi. Criteria F: Symptoms cause significant distress or impairment. The record clearly documents that GySgt has had a difficult transition to civilian life with occupational impairment, poor judgment, and marital difficulties. While it is not as clear to me that the difficulties are directly resultant from GySgt Lockwood's symptoms, I believe this evidence of social and occupational impairment fulfills Criteria F.

b. In his advisory opinion, LCDR Carroll implies that it is inconsistent with the diagnosis of PTSD for GySgt Lockwood to discuss the attack on the USS Liberty with his peers. While this may have some superficial validity when compared to DSM-IV criteria C, it does not negate the diagnosis of PTSD. One of the natural therapeutic modalities for PTSD is for survivors of the same or similar traumatic events to share their experiences and reactions. One of the objectives of Group Therapy for PTSD is to encourage such interchange. LCDR Carroll's point is accurate in specific, but not in context. In my medical opinion, GySgt Lockwood's efforts for validation and recognition do not invalidate the diagnosis of PTSD.

c. LCDR Carroll also notes that GySgt Lockwood did not seek psychiatric help for his symptoms. It is my opinion that those individuals suffering from PTSD more frequently do not seek medical attention than is otherwise the case, especially early in the onset of the disorder. The insidious nature of PTSD is such that those with the condition typically do not seek help. This is consistent with DSM-IV Criteria C: avoidance of stimuli. In addition, the diagnosis of PTSD (1980) had not been established at the time GySgt Lockwood developed his symptoms (1967). There was, and still is, a strong stigma in the military, and especially the Marine Corp,

**National Naval Medical Center**
Adult Behavioral Healthcare Clinic
Bethesda, MD 20889

against mental illness of any sort. This stigma raises an additional barrier to those individuals who might otherwise seek medical attention. In establishing a diagnosis, it is neither significant nor helpful that GySgt Lockwood did not seek psychiatric care in the early phase of his illness, as this is consistent with the presentation of PTSD.

d. My opinion is based on my review of the aforementioned references. I did not have the benefit of interviewing GySgt Lockwood myself. Nevertheless, his record, medical evaluations, and psychological evaluation appear to be consistent and to provide compelling data for the diagnosis of PTSD, chronic.

5. In summary, I find that the preponderance of data is indicative that GySgt BRYCE F. LOCKWOOD developed chronic Post Traumatic Stress Disorder as a result of his combat experiences while serving in the USMC on active duty. This condition is associated with occupational and social impairment. He is likely to require lifetime treatment by mental health professionals. I cannot make treatment recommendations based on the information I have available at this time. I recommend the Board of Correction of Naval Records amend GySgt Lockwood's record per his request.

JOHN B. STETSON, MD
MAJ, USAF, MC

FRANCES I. STEWART, MD
CAPT, MC, USN

NAVAL MEDICAL CENTER, SAN DIEGO, CALIFORNIA

TO: CHAIRMAN, BOARD FOR CORRECTIONS OF NAVAL RECORDS
FROM: MATTHEW F CARROLL MD, LCDR MC, USNR

SUBJECT:
Comments and recommendations in the case of former GYSGT Bryce F. Lockwood, USMC, 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.

REFERENCE:
1. BCNR file.
2. Service record.
3. VA records, medical records.

Gunnery Sergeant Bryce F. Lockwood has requested that the Board for Corrections of Naval Records show that at the time of his discharge, that he was suffering from post traumatic stress disorder, depression, and fatigue and anxiety neurosis. Mr. Lockwood was on the USS Liberty on June 7, 1967, when it was attacked. He subsequently served in Vietnam between 1969 and 1970. Many of the records that were sent to me revolve around Mr. Lockwood attempts to obtain a Medal of Honor. I will not comment on this issue, and I will only comment on his issue of medical disability.

The only medical record after his discharge that I have received is a record dated December 11, 1997, by John Smothers, Ph.D. I do not have any records, showing that Mr. Lockwood has actually sought any psychiatric care.

On June 8, 1967, the USS Liberty came under shell fire. Mr. Lockwood was below the deck at that time. He apparently carried several men to safety, but has no clear memory of these events.

Summary of record provided by John M. Smothers, Ph.D., dated December 11, 1997: After he left the service he tried several different jobs and occupations and did not stay with any of them very long. He started two businesses that failed. Mr. Lockwood claimed to Dr. Smothers that stress and preoccupation about his combat experience in general and his experience on the Liberty had badly damaged his sense of resiliency and his ability to take care of himself. "He particularly thinks that his life-saving efforts, at the great risk of personal danger, had been overlooked."

Mr. Lockwood's history reveals that after his military discharge, he worked with a contractor for two years. He then started his own book and gift store that he lost within two years. He sold insurance for three years and then was terminated. He tried to be a service station manager for Exxon, but resigned within the year. He returned to heavy construction, but injured his back. He worked as an associate minister for approximately a year and then resigned. According to the record, as a minister Mr. Lockwood was asked to contribute much to the church. This apparently depleted his savings from his military retirement and

he never saw the money again.

Mr. Lockwood briefly had his own trucking company. He then worked as an employee and truck driver for a wholesale grocery type company. The report goes on to state that Mr. Lockwood has kept in contact with current active military organizations, but feels he has received no recognition for his service. The report states "Mr. Lockwood believes that the United States Government has not acknowledged this antecedent because the armed services of a friendly government reportedly initiated the attack. The client believes that the government has not acknowledged heroic actions taken by him and other service personnel for similar reasons. He acknowledges being quite angry about this lack of support."

Dr. Smothers diagnosed Mr. Lockwood with post traumatic stress disorder.

OPINION:
It is my opinion, that Mr. Lockwood's claim should be denied. His records, reveal that he is a man who feels bitter over how he has been treated by the United States Government. He feels that he is entitled to receive a Medal of Honor. Mr. Lockwood has spent considerable time and effort to document his service in the military and to try to obtain a Medal of Honor.

I will first address the items of post traumatic stress disorder, that Dr. Smothers has noted.

1. The patient has experienced a life-threatening traumatic event: This does appear to be correct.

2. The person involved reacted with fear, helplessness or horror: Again, based on the available record, this does appear to be correct.

3. Recurrent or intrusive recollections: Although, Mr. Lockwood may be having recurrent or intrusive recollections, it appears that much of this has been of his own doing. Rather than trying to forget about his experience, which is much more common in an individual with post traumatic stress disorder, Mr. Lockwood has continued to contact individuals to try to justify the fact that he deserves the Medal of Honor. Mr. Lockwood's difficulty dealing with the attack on the Liberty, appeared to be much more due to the fact that he did not receive the Medal of Honor, than actual symptoms of post traumatic stress disorder.

4. Current dreams: There is no way, based on the records, to know whether this is true or not. This is based strictly off Mr. Lockwood's self report. Mr. Lockwood did not seek help for over thirty years for this problem, if he does have recurrent dreams.

5. Markedly diminished interest in other activities: Dr. Smothers notes "the client devotes much of his time, attention and energy to the harrowing experiences that I have described in his belief that he has been abandoned by the United States Government because the attack was reportedly initiated by a reputably friendly government." In post traumatic stress

disorder, an individual that has diminished interest and activities has continued problems because of the trauma that they have suffered. In this case, it is Mr. Lockwood's complaint that he has not been acknowledged for his heroic actions that are causing him problems. This is not indicative of post traumatic stress disorder, but rather bitterness over being unacknowledged for his actions.

6. Feeling of detachment and estrangement from others: This characteristic of post traumatic stress disorder, may be correct in this case. However, the fact that he has a poor work history, does not necessarily relate to his attack on the Liberty. Mr. Lockwood had several failed businesses. The majority of small business owners in the U.S. have had failures.

7. Restricted range of affect: There is no evidence that this is incorrect.

8. Difficulty concentrating: Dr. Smothers noted "because of the interview material that Mr. Lockwood gave me, I believe that he becomes so preoccupied with issues associated with the Liberty that he does not think and concentrate effectively. As noted previously, Mr. Lockwood's preoccupation with the liberty does not revolve around the fact that he was in a traumatic situation. It revolves around the fact that he feels the United States Government has not acknowledged his actions properly. This, in my opinion, is not a characteristic of post traumatic stress disorder.

The majority of individuals with post traumatic stress disorder, try to avoid thoughts, feelings or conversations associated with the trauma. They additionally often try to avoid activities, places or people that arouse recollections of the trauma. In this case, Mr. Lockwood is making no effort to avoid recollections around the trauma. He is contacting other members of the Command he was with and he is spending a great amount of effort to try to obtain a Medal of Honor.

The records available to me, did not have any psychiatric evaluations revealing that Mr. Lockwood suffered from depression or fatigue and anxiety neuroses.

His record from June 1972 sates "Sx. Of anxiety and depression related to medical retirement from USMC after 13 years." There is no mention that his symptoms were related to his service, rather they were related to his retirement.

No records show that he has sought treatment for any psychiatric problems. He has only obtained one evaluation for the purpose of seeking compensation.

In summary, it is my opinion with reasonable medical certainty, that Mr. Lockwood has not provided adequate documentation to demonstrate that he suffers from post traumatic stress disorder, depression, or fatigue and anxiety neuroses. There is not sufficient to show that he suffered from these symptoms at the time of his discharge from the military Mr. Lockwood has failed in many of his business endeavors. He is getting closer to retirement age and appears to be suffering financially. Mr. Lockwood certainly has an external incentive

to now claim that he is suffering from these psychiatric symptoms so that he can obtain disability benefits.

MATTHEW F CARROLL LCDR MC USNR

**National Naval Medical Center**
Adult Behavioral Healthcare Clinic
Bethesda, MD 20889

April 29, 2004

TO: Chairman, Board for Correction of Naval Records
From: John Stetson, MAJ, USAF, MC

Subject: Comments and Recommendations in the case of former GySgt BRYCE F. LOCKWOOD, USMC, 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

Reference:
1. BCNR File
2. USMC Service Record
3. VA records
4. Comments and Recommendations in the case of former GySgt BRYCE F. LOCKWOOD, USMC, 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, undated, Matthew Carroll, LCDR, MC, USNR
5. Applicants Motion to Reopen for Newly Discovered Evidence and Motion for Reconsideration, 16 Nov 2001, William Kenney, Esq.
6. Psychiatric Report: Bryce Lockwood, 28 August 2001, Frank Ochberg, MD

1. Gunnery Sergeant Lockwood has requested that the Board reconsider his request for Correction of his record to show that at the time of his discharge he suffered from Post Traumatic Stress Disorder (PTSD). The Board denied GySgt Lockwood's initial application on 05 October 2000.

2. Subsequent to his initial application, GySgt Lockwood has obtained an additional psychiatric evaluation by Frank Ochberg, M.D. and additional VA medical records. In light of this new evidence, the subject wishes to rebut the Board's decision and, in specific, the findings of LCDR Carroll.

3. GySgt Lockwood served in the USMC from 1959 until 1972. During this period of service, he was present on the USS Liberty when it was attacked on 08 June 1967. The subject desires to have his record reflect that as a result of this attack, he developed Post Traumatic Stress Disorder and that he was medically retired from the USMC by reason of having Post Traumatic Stress Disorder.

4. OPINION: After reviewing GySgt Lockwood's record, the findings of John M. Smothers, Ph.D., the affidavit provided by Mrs. Lois Lockwood, the opinion of LCDR Carroll, MD, and the findings of Frank M. Ochberg, MD, it is my medical opinion that GySgt Bryce F. Lockwood has Post Traumatic Stress Disorder (PTSD), chronic, stemming from his participation in the attack on the USS Liberty. This disorder was incurred in the line of duty.

MAY 1 ? 2004

National Naval Medical Center
Adult Behavioral Healthcare Clinic
Bethesda, MD 20889

a. GySgt Lockwood meets the DSM-IV-TR criteria for PTSD as described below:

i. Criteria A: Traumatic Event. GySgt's involvement in the attack upon the Liberty and subsequent combat experiences in Vietnam have been well documented and fully meet the criteria for a life-threatening experience. Furthermore, GySgt appears to have had a dissociative reaction during the attack upon the USS Liberty. Such a reaction is a significant risk factor for developing PTSD and is a diagnostic criteria for Acute Stress Disorder, a precursor to PTSD. These symptoms fulfill Criteria A.

ii. Criteria B: Re-experiencing the Trauma. Several of the above mentioned references clearly document that GySgt Lockwood has experienced recurrent distressing thoughts of the events aboard the USS Liberty. These thoughts appear to be in excess of normal recollection and do fulfill Criteria B. In addition, both GySgt Lockwood and his wife attest to his having recurrent nightmares of the attack upon the Liberty. These nightmares may have started as early as 1972. This symptom also fulfills Criteria B. Moreover, Dr. Ochberg documents that GySgt Lockwood has had flashbacks of the attack as early as 1967. Flashbacks are a classic hallmark of PTSD, but are not required for the diagnosis of PTSD. This symptom also fulfills Criteria B.

iii. Criteria C: Avoidance of stimuli associated with the traumatic event. LCDR Carroll's comments in his advisory opinion in re Criteria C are duly noted, however, they do not exclude a diagnosis of PTSD. GySgt Lockwood appears to have avoided unexpected exposure to evocative stimuli, he has had difficulty recalling the events of the attack, he has displayed social isolation, estrangement from his wife, and has displayed a restricted range of affect. These symptoms appear to have started before or by 1972. These symptoms fulfill Criteria C. Moreover, it is my medical opinion that GySgt Lockwood increased use of alcohol represents an additional symptom of avoidance. PTSD has a high alcohol abuse co-morbidity rate.

DEPARTMENT OF THE NAVY
NAVAL COUNCIL OF PERSONNEL BOARDS
720 KENNON STREET SE STE 309
WASHINGTON NAVY YARD DC 20374-5023

IN REPLY REFER TO

5220
Ser: 04-06
26 Jul 04

From: Director, Naval Council of Personnel Boards
To: Executive Director, Board for Corrections of Naval Records

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN THE CASE OF GYSGT BRYCE F. LOCKWOOD, USMC, FORMER, 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

Ref: (a) Your ltr JR:jdh Docket No: 09330-02 of 14 May 04
(b) SECNAVINST 1850.4E

1. This letter responds to reference (a) which requested comments and a recommendation regarding Petitioner's request for correction of his naval records. On 30 June 1972, the Petitioner was separated with severance pay incident to the 14 April 1972 Central Physical Evaluation Board (CPEB) finding, regarding Arthralgias, underlying etiology not determined. He was rated under Veteran Affairs (VA) Code 5009-5002 at 20%. The VA awarded a combined rating of 40% for Post Traumatic Stress Disorder (30%), Tinnitus (10%), and Non-displaced Zygomatic Fracture (0%) on 13 January 2000.

2. The Petitioner's case history, contained in reference (a), was thoroughly reviewed in accordance with reference (b) and is returned. The following comments are provided:

a. The petitioner, a decorated combat veteran, is requesting a retrospective modification of his 1972 medical discharge adding the diagnosis of Post Traumatic Stress Disorder resulting from his experiences aboard the USS Liberty on 7 June 1967, and aggravated by service in Vietnam from 1968 to 1970 rendering him "permanently disabled" at a rating of 70% and Placement on the Permanent Disability Retirement List.

b. The available records including evaluations by psychiatrists, while not in total agreement, nonetheless present a compelling picture of inspiring service to country, inadequately recognized heroism, and longstanding lingering symptoms suggestive of Post Traumatic Stress Disorder likely having their onset while Petitioner was on active duty and significantly worsening subsequent to his medical discharge in 1972.

Subj: REQUEST FOR COMMENTS AND RECOMMENDATIONS IN THE CASE OF GYSGT BRYCE F. LOCKWOOD, USMC, FORMER, 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

c. However, Gunnery Sergeant Lockwood's Fitness Report record and subsequent record, also, suggest that the same fortitude & tenacity which allowed him to pursue his elsewhere documented considerable acts of heroism would appear to have enabled him to conceal his emotional pain sufficiently to permit him to complete circa thirteen years of active service with a recommendation for promotion as well as hold down a job for about two years subsequent to his discharge.

d. The determinations of the uniformed services Disability Evaluation System (thru its Physical Evaluation Boards) are performance based, requiring credible evidence that a given condition renders a member unfit for duty while on active duty in contrast to the Veterans Affairs' disability evaluation process, which is, largely, manifestation based, requiring only that a given condition has service connection.

e. Consequently, sadly, while the evidence for service connection (for VA purposes) is compelling, there is insufficient evidence that the Petitioner's Post Traumatic Stress Disorder rendered him unfit during the time that he served on active duty.

M. N. CULVER