No. 06-543C
(Judge Horn)

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

BRYCE F. LOCKWOOD,

Plaintiff,
v.

THE UNITED STATES,

Defendant.

---

**DEFENDANT'S MOTION TO DISMISS**

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRYANT G. SNEE
Deputy Director

OF COUNSEL:
LT KATHERINE PASIETA
United States Navy
Office of the Judge Advocate General
General Litigation

DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel. (202) 616-0170
Fax. (202) 514-8624

June 22, 2007

Attorneys for Defendant

# TABLE OF CONTENTS


TABLE OF AUTHORITIES . . . . . ii

ISSUES PRESENTED . . . . . 1

STATEMENT OF THE CASE . . . . . 1

I. Nature of the Case . . . . . 1

II. Statement of Allegations in the Complaint . . . . . 2

ARGUMENT . . . . . 6

I. The Complaint Must Be Dismissed For Lack Of Subject Matter Jurisdiction Because Mr. Lockwood's Military Disability Retirement Claim Is Barred By The Statute Of Limitations . . . . . 6

A. Legal Standard . . . . . 6

B. Mr. Lockwood's Claim For Military Disability Retirement Pay Accrued At His PEB In 1972 And The Limitations Period Expired In 1978 . . . . . 7

II. Statutory Tolling Does Not Apply . . . . . 11

III. Equitable Tolling Does Not Apply . . . . . 13

CONCLUSION . . . . . 15

**TABLE OF AUTHORITIES**

**CASES**

Alder Terrace, Inc. v. United States,
161 F.3d 1372 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Bailey v. West,
160 F.3d 1360 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Barrett v. Principi,
363 F.3d 1316 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Biester v. Midwest Health Servs. Inc.,
77 F.3d 1264 (10th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bilbrey v. Douglas,
124 Fed. Appx. 971 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Bouley, By and Through Collier v. Sec'y of Health & Human Svcs.,
37 Fed. Cl. 227 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Brice v. Sec'y of Health and Human Servs.,
240 F.3d 1367 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Chambers v. United States,
417 F.3d 1218 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Frazer v. United States,
288 F.3d 1347 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Friedman v. United States,
159 Ct. Cl. 1, 310 F.2d 381 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 10, 15

Fuller v. United States,
14 Ct. Cl. 542 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Goewey v. United States,
222 Ct. Cl. 104, 612 F.2d 539 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hamlet v. United States,
873 F.2d 1414 (Fed. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Holloway v. United States,
60 Fed. Cl. 254 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Hopland Band of Pomo Indians v. United States,
855 F.2d 1573 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Hurick v. Lehman,
782 F.2d 984 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

Irwin v. Dep't of Veterans Affairs,
498 U.S. 89 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

John R. Sand & Gravel Co. v. United States,
457 F.3d 1345 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

MacLean v. United States,
454 F.3d 1334 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Marcinkowsky v. United States,
206 F.3d 1419 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Martinez v. United States,
333 F.3d 1295 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8, 13

Moyer v. United States,
190 F.3d 1314 (Fed. Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Myers v. United States,
50 Fed. Cl. 674 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

Price v. Lewis,
119 Fed. Appx. 725 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Real v. United States,
906 F.2d 1557 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

RHI Holdings, Inc. v. United States,
142 F.3d 1459 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sanders v. United States,
252 F.3d 1329 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Scheuer v. Rhodes,
416 U.S. 232 (1974) . . . . . . . . . . 7

United States v. Brockamp,
519 U.S. 347 (1997) . . . . . . . . . . 14

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . 6

United States v. Mitchell,
463 U.S. 206 (1983) . . . . . . . . . . 6

United States v. Sherwood,
312 U.S. 584 (1941) . . . . . . . . . . 6

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . 6

Ware v. United States,
57 Fed. Cl. 782 (2003) . . . . . . . . . . 11

**STATUTES**

10 U.S.C. § 1201 . . . . . . . . . . 9

28 U.S.C. § 1491(a)(1) . . . . . . . . . . 6

28 U.S.C. §2501 . . . . . . . . . . 6, 7, 11, 14

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BRYCE F. LOCKWOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06-543c |
| | ) | (Judge Horn) |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Pursuant to the Rule of the Court of Federal Claims ("RCFC") 12(b)(1), the United States respectfully requests that the Court dismiss the plaintiff's complaint for lack of subject matter jurisdiction because Mr. Lockwood's claim is barred by the statute of limitations and he cannot establish a basis to toll the statute.

**ISSUE PRESENTED**

Whether the Court lacks jurisdiction to entertain Lockwood's claim because it is barred by the statute of limitations.

**STATEMENT OF THE CASE**

I. **Nature Of The Case**

The plaintiff, Bryce Lockwood, is a former United States Marine Corps Gunnery Sergeant who served his country for 13 years between 1959 and 1972. During his military career, Sergeant Lockwood saw combat in Vietnam, and also served aboard the U.S.S. Liberty when it came under fire from Israeli airplanes and torpedo boats on June 8, 1967. During the attack, Sergeant Lockwood rescued several of his shipmates from the Liberty's internal compartments and, for his heroism, was decorated with the Silver Star.

Sergeant Lockwood's military career ended after he was processed through a complete

Physical Evaluation Board ("PEB") on April 14, 1972, which found him to be unfit for duty due to permanent disability with a diagnosis of arthralgia. The PEB recommended that Sergeant Lockwood be discharged from the military with a disability rating of 20 percent. On June 30, 1972, Sergeant Lockwood was honorably discharged from the Marine Corps for physical disability and received disability severance pay in the amount of $15,710.84.

In 1998, Mr. Lockwood applied to the Board for Correction of Naval Records ("BCNR" or the "board") to correct his military records to show, on the date of his discharge in 1972, that he was disabled due to a diagnosis of post-traumatic stress disorder ("PTSD"), and that he was permanently retired with a disability rating of 70 percent. The board denied the application in 2000. Mr. Lockwood submitted two motions to reopen and reconsider, and the board denied his application again in 2006.

Mr. Lockwood now asks this Court to correct his military record to show, on the date of his discharge in 1972, that he was disabled due to a diagnosis of post-traumatic stress disorder, and that he was permanently retired with a disability rating of 70 percent.

Mr. Lockwood's claim for military disability pay accrued when the PEB, the first authorized statutory board, heard his claim for disability benefits on April 14, 1972. Because military pay claims are subject to the Tucker Act's six-year statute of limitations, Mr. Lockwood should have brought his claim to this Court on or before April 14, 1978. Instead, he waited 28 years after the limitations period had expired to file his complaint, and he cannot establish a basis to toll the statute of limitations. Accordingly, the Court should dismiss this case.

## II. <u>Statement Of Allegations In Complaint</u>

Mr. Lockwood entered active duty on April 15, 1959. He served 13 years active duty in

the Marine Corps and attained the rank of Gunnery Sergeant. Compl ¶ 3(a), AR 171. On June 8, 1967, Mr. Lockwood was serving aboard the U.S.S. Liberty (AGTR 5) in the communication spaces below deck. Compl ¶ 3(o). While the ship was operating off the coast of the Gaza strip, the Israeli Air Force and Israeli Navy opened fire on the U.S.S. Liberty, killing and injuring many United States Marines and Sailors. Compl ¶ 3(g) & (u). Mr. Lockwood received the Silver Star for his heroism during the attack. Compl ¶ 3(v). Mr. Lockwood now claims that the Israeli attack was intentional and the United States covered-up and excused the attack for political reasons. Compl ¶ 3(cc). He also claims that the Navy issued a "silencing order" to all members of the U.S.S. Liberty crew, ordering that they were not allowed to discuss the events of the attack. Compl ¶ 3(hh).

After the attack, Mr. Lockwood, his wife and certain of his fellow service members contend that Mr. Lockwood started experiencing several adverse psychiatric symptoms, including depression. Compl ¶ 3(dd)-(hh).

Nearly two years after the attack upon the Liberty, Mr. Lockwood transferred to FMF III for duty in Vietnam. Compl. ¶ 3(ii). He claims that, during his tour in Vietnam, he suffered ongoing depression as a result of the U.S.S. Liberty attack, and the horror he saw in Vietnam became part of his "ever continuing nightmares and flashbacks." Compl. ¶ 3(jj). Mr. Lockwood states that he used alcohol to cope with the nightmares and flashbacks. Compl. ¶ 3(kk). His nightmares and flashbacks only increased after a helicopter he was riding in was shot down and he came under sniper attack. Compl. ¶ 3(mm). Mr. Lockwood states that he discussed his nightmares, flashbacks and inability to sleep with other Marines in his unit, and also states that they told him not to discuss his psychiatric symptoms with any military doctors. Compl. ¶ 3(nn).

When Mr. Lockwood returned from his service in Vietnam in February 1970, his wife describes him as a "nervous wreck" who drank heavily and had nightmares about floating bodies on the U.S.S. Liberty and mangled women and children in Vietnam. Compl. ¶ 3(oo). After his tour in Vietnam, Mr. Lockwood contends that he "began experiencing indistinct pain in his legs, back and throughout his body, and his flashbacks of the U.S.S. Liberty attack become increasingly disruptive." Compl. ¶ 3(pp).

Mr. Lockwood had an initial Medical Board on June 30, 1971, and he was diagnosed with arthralgia but found to be fit for duty. Compl. ¶ 3(qq). He did not appeal this finding. Compl. ¶ 3(rr). Because his symptoms did not subside after this initial board, Mr. Lockwood requested another Medical Board and was processed through a PEB on April 14, 1972. Compl. Id. He was found to be unfit for duty due to permanent disability with a diagnosis of arthralgia. The PEB recommended discharge with a disability rating of 20%. Id. Mr. Lockwood did not appeal this finding. Joint Statement of Facts ¶ 9. On June 1, 1972, Mr. Lockwood went to sickbay complaining of extreme fatigue, and his medical notes for that visit indicate that he presented with symptoms of depression related to his imminent medical retirement. Id. at ¶36; AR[1] 176; Compl. ¶ 3(ss). Mr. Lockwood was honorably discharged from the Marine Corps on June 30, 1972 for physical disability and paid $15,710.84 disability severance pay. Joint Statement of Facts ¶ 10; AR 171.

Mr. Lockwood claims that in the years following his discharge, all of the psychiatric symptoms that he experienced during active duty "worsened." Compl. ¶ 3(tt). Mrs. Lockwood

---

[1] Citations to "AR" refer to the Administrative Record filed in this case by the defendant on January 3, 2007, docket no. 17.

states that ever since the U.S.S. Liberty attack, she urged her husband to seek treatment for his symptoms of nightmares, flashbacks, antisocial behavior, inability to sleep, uncontrollable anger, and frequent crying bouts. Compl. ¶ 3(xx).

In the fall of 1997, a private psychologist diagnosed Mr. Lockwood with post-traumatic stress disorder. Compl. ¶ 3(yy). Mr. Lockwood submitted an Application for Correction of Military Record to the BCNR on October 1, 1998, requesting 70% disability rating and to be placed on the permanent retired list. Compl. ¶ 3(zz). On October 11, 2000, the BCNR denied Mr. Lockwood's application. Compl. ¶ 3(aaa). On August 28, 2001, Mr. Lockwood underwent another psychiatric interview with a new psychiatrist, Dr. Frank Ochberg. Compl. ¶ 3(bbb). Dr. Ochberg concluded that Mr. Lockwood "had no PTSD before June 1967 and did ever after." Compl. ¶ 3(ccc).

From September 2001 to September 2005, Mr. Lockwood sought reconsideration from the BCNR and filed several papers requesting further consideration. Compl. ¶ 3(fff)-(kkk). On April 11, 2006, the BCNR denied Mr. Lockwood's request for further consideration. Compl. ¶ 3(lll). Relying on an advisory opinion furnished by LCDR Matthew Carroll, the board found that the evidence was insufficient to establish the existence of probable material error or injustice in the Navy's fitness for duty decision, notwithstanding the comments made in other advisory opinions and the expert witnesses that Mr. Lockwood obtained. AR 40-48. The BCNR concluded that Mr. Lockwood did not demonstrate that he suffered from post-traumatic stress disorder prior to his discharge in 1972. AR 40-48.

Mr. Lockwood filed his complaint before this Court on July 27, 2006. Compl. at 1.

## ARGUMENT

I. The Complaint Must Be Dismissed For Lack Of Subject Matter Jurisdiction Because Mr. Lockwood's Military Disability Retirement Claim Is Barred By The Statute Of Limitations

A. Legal Standard

The Tucker Act, 28 U.S.C. § 1491(a)(1), grants this Court jurisdiction to entertain monetary claims founded upon the Takings Clause of the United States Constitution, statutes, regulations, or contracts. See United States v. Mitchell, 463 U.S. 206, 215-18 (1983). It is well-settled that the Tucker Act is a limited waiver of the United States' sovereign immunity. See United States v. Mitchell, 445 U.S. 535, 538 (1980); United States v. Testan, 424 U.S. 392, 399 (1976). Any statute creating a waiver of sovereign immunity must be strictly construed. See United States v. Sherwood, 312 U.S. 584, 590 (1941).

The Tucker Act's statute of limitations, 28 U.S.C. § 2501, is an express limitation on the United States' waiver of its sovereign immunity, is a "jurisdictional prerequisite," and it cannot be waived. John R. Sand & Gravel Co. v. United States, 457 F.3d 1345, 1354-55 (Fed. Cir. 2006), reh'g en banc denied (Nov. 30, 2006); see also MacLean v. United States, 454 F.3d 1334, 1336 (Fed. Cir. 2006) ("In the Court of Federal Claims, the statute of limitations 'is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed.'") (citation omitted); Martinez v. United States, 333 F.3d 1295 (Fed. Cir. 2003) (en banc) ("It is well established that statutes of limitations for causes of action against the United States, being conditions on the waiver of sovereign immunity, are jurisdictional in nature.").

28 U.S.C. §2501 provides, in pertinent part:

> Every claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the ***petition thereon is filed within six years after such claim first accrues***.
> * * *
> A petition on the claim of a person under legal disability or beyond the seas at the time the claim accrues may be filed within three years after the disability ceases.

(emphasis added).

The plaintiff bears the burden of establishing, by a preponderance of the evidence, that his claims are not barred by the statute of limitations. See Sanders v. United States, 252 F.3d 1329, 1333 (Fed. Cir. 2001); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1376-77 (Fed. Cir. 1998). On a motion to dismiss, the Court should view the allegations of the complaint in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988); Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989). If necessary to resolve the jurisdictional issues, the Court may also examine relevant evidence beyond the pleadings. Moyer v.United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999).

Thus, Mr. Lockwood had six years from the accrual of his claim for military disability retirement pay to file his complaint in this Court, unless he can establish that he was under a qualifying legal disability at the time of his PEB and it persisted, uninterrupted, through at least July 27, 2003. He cannot.

B. Mr. Lockwood's Claim For Military Disability Retirement Pay Accrued At His PEB In 1972 And The Limitations Period Expired In 1978

A plaintiff's cause of action accrues when all events fixing the Government's liability have occurred and plaintiff knew or should have been aware of their existence. Martinez, 333

F.3d at 1303-4 (citing Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1576-77 (Fed. Cir. 1988)). A cause of action upon "claims of entitlement to disability retirement pay generally do not accrue until the appropriate military board either finally denies such a claim or refuses to hear it." Chambers v. United States, 417 F.3d 1218, 1224 (Fed. Cir. 2005) (citing Real v. United States, 906 F.2d 1557, 1560 (Fed. Cir. 1990), and Friedman v. United States, 159 Ct. Cl. 1, 310 F.2d 381, 389 (1962)). "The decision by the first statutorily authorized board that hears or refuses to hear the claim invokes the statute of limitations." Id. A Physical Evaluation Board ("PEB") given at the time of retirement is a board authorized to make a final disability determination, and its decision will trigger the statute of limitations. Real, 906 F.2d at 1560; see also Fuller v. United States, 14 Ct. Cl. 542, 544 (1988) ("The PEB is a proper and competent tribunal whose decision is adequate to trigger the running of the statute of limitations."). A veteran's subsequent petition to a military correction board does not toll the running of the limitations period, nor does the denial of such petition it cause a new claim to accrue. Friedman, 310 F.2d at 390, 396-98 (1962); see also Hurick v. Lehman, 782 F.2d 984, 987 (Fed. Cir. 1986) ("[T]he Court of Claims . . . has held that resort to a Correction Board is permissive (rather than a mandatory) step, which does not suspend the running of the statute.").[2]

Finally, because any claim for disability retirement pay is inextricably linked to the

[2] The action of a military correction board can trigger the running of the statute of limitations where the veteran has not had an opportunity, or has been denied the opportunity, to have a statutorily authorized board hear his or her claim for disability benefits. Friedman, 310 F.2d at 389. In this case, however, Mr. Lockwood had a PEB prior to his retirement from military service, and his petition to the Board for Correction of Naval Records had no effect on the statute of limitations.

service member's condition at the time of his separation from the service,[3] a service member is only entitled to one claim for military disability benefits. As the United States Court of Appeals for the Federal Circuit explained:

> [I]t is unusual to have two or more causes of action stemming from the same events or transactions, but arising at wholly different times. Theoretically, it would not be impossible for Congress to make such provision, but in the absence of some definite legislative indication to that effect it is preferable to follow the normal principle that ***out of one set of facts and circumstances involving the claimant's separation from service there arises but one claim*** for the same kind of relief (money, in the case of disability retirement pay claims). This is all the more true since our limitations statute is phrased in terms of the "first" accrual of the claim. 28 U.S.C. § 2501. The legislative emphasis on first accrual cautions against multiplication of monetary claims successively arising out of essentially the same facts.

Friedman, 310 F.2d at 400-401 (emphasis added).

Mr. Lockwood alleges that, prior to his discharge from the Marine Corps in 1972, he was examined by two separate Medical Boards as well as a PEB. Compl. ¶ 3(qq), (rr). Mr. Lockwood also alleges that he accepted the PEB's determination that he was sufficiently disabled to warrant a discharge and severance pay, and he declined to appeal the PEB's decision regarding his disability rating. Compl. ¶ 3(rr). His claim for disability retirement pay accrued, and the statute of limitation on that claim began to run, on the date of his PEB, April 14, 1972. The statute of limitations expired six years later on April 14, 1978. The present complaint was filed more than 28 years after the statute of limitations ran, and therefore this Court lacks jurisdiction to entertain Mr. Lockwood's claim.

---

[3] 10 U.S.C. § 1201 provides that a service member may be retired from the military if the Secretary of the appropriate military branch finds the service member to be "unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability."

The fact that Lockwood now seeks to add another disabling condition[4] to the calculus for his disability retirement pay does not change this result. As explained above, a service member accrues only one claim for disability retirement pay. The six-year statute of limitations is more than enough time for a service member who has had a retirement board to correct any perceived errors with the benefit he has received:

> a claimant who has had a Retiring Board proceeding . . . ordinarily has adequate notice of his potential entitlement to disability retirement pay so that he can and should bring suit within six years; he is not caught unawares by the sudden development of a latent or progressive condition that he reasonably thought non-disabling at the time of his separation. Such a claimant should be fully able to protect himself by bringing suit in time.

Friedman, 310 F.2d at 398.

This Court has rejected the argument that a disability retirement pay claim accrues (or renews) in increments as each of the afflicted service member's diseases manifest. In Myers v. United States, 50 Fed. Cl. 674 (2001), the plaintiff, who had received a disability discharge for severe chronic allergic urticaria and angioedema, filed a claim in the United States Court of Federal Claims seeking to correct his military records so he could receive disability retirement military pay for, among other things, post traumatic stress disorder. 50 Fed. Cl. at 676, 679. He filed his claim more than six years after his disability discharge, and the Government moved to dismiss for a lack of subject matter jurisdiction. In response, the plaintiff argued that "his claim did not accrue in relation to his tinnitus, PTSD, and Major Depressive Disorder until the PEB made a final administrative determination regarding them. . . . [in other words,] since the PEB did not consider these conditions . . . the statute was never triggered in relation to them." Id. at

---

[4] Lockwood was separated from the service because he had arthralgia; he now alleges that he also had post-traumatic stress disorder.

684. The Court was not persuaded and dismissed the case. Id. at 697.[5]

II. Statutory Tolling Does Not Apply

28 U.S.C. § 2501 tolls the six-year statute of limitations for "person[s] under legal disability . . . at the time the claim accrues," and requires such persons to file their claims "within three years after the disability ceases."

This tolling provision is difficult to invoke, as the law presumes plaintiffs to be sane and competent, and sanity and competency and plaintiffs wishing to proceed under this provision bear the high burden of proving incapacity. See Goewey v. United States, 222 Ct. Cl. 104, 612 F.2d 539, 544 (1979). Indeed, "to rise to the level of a legal disability for purposes of tolling the statute of limitations, a Plaintiff's . . . illness must be acute and extreme -- it must render the Plaintiff 'incapable of caring for his property, of transacting business, of understanding the nature and effect of his acts, and of comprehending his legal rights and liabilities.'" Ware v. United States, 57 Fed. Cl. 782, 788 (2003) (citing Goewey, 222 Ct. Cl. 104, 612 F.2d 539).

Even if Mr. Lockwood were able to invoke this provision, he would have to demonstrate that he was continually incapacitated between the time his claim accrued -- 1972 -- and at most three years prior to the filing of the complaint in this case -- July 27, 2003. The allegations at paragraphs 3(uu) and 3(vv) claim that, in the years following his separation from the military, Mr. Lockwood started his own business, bought another business, worked as an insurance

---

[5] The Court ultimately held that the plaintiff's claim was barred by the statute of limitations, and it is our position that this holding rejects plaintiff's accrual argument. However, the Court's treatment of the plaintiff's accrual argument is admittedly not that clear: it is introduced under the heading "Tolling the statute of limitations," and that introduction is immediately followed by a discussion of evidence in the administrative record demonstrating that the PEB physicians performed a thorough examination of the plaintiff at the time of his discharge and did not find that any of his symptoms of these afflictions were ratable for disability discharge purposes. 50 Fed. Cl. at 684-85.

salesman and drove a tractor-trailer. While those same allegations state that Mr. Lockwood failed in all of these ventures, he admits that he was able to transact business to a degree, however unsuccessfully. Additionally, Mr. Lockwood alleges that he filed his initial application for the correction of his military records with the BCNR in 1998. Cmplt. ¶ 3(zz). This action was taken to further the very same legal rights he presses in this case. Courts have declined the invitation to toll statutes of limitation on the basis of incapacity where the plaintiff has demonstrated that he was able to file legal papers. See Biester v. Midwest Health Servs., 77 F.3d 1264, 1268 (10th Cir.1996) (finding equitable tolling inappropriate where the evidence demonstrated the plaintiff's ability to file his claim, in spite of his mental condition). See also Price v. Lewis, 119 Fed. Appx. 725, 726 (6th Cir. 2005) ("The exceptional circumstances that would justify equitable tolling on the basis of mental incapacity are not present when the party who seeks the tolling has been able to pursue his or her legal claims during the period of his or her alleged mental incapacity.") (internal quotation marks omitted); Bilbrey v. Douglas, 124 Fed. Appx. 971, 973 (6th Cir. 2005) (denying tolling to schizophrenic petitioner who was able to make court filings during period sought to be tolled).

Mr. Lockwood was fully capable of acting to pursue his claim in a timely fashion, and the Tucker Act's tolling provision is unavailable to him. Even if he could somehow demonstrate that he was sufficiently incapacitated to toll the statute, he demonstrated that he was capable of understanding and pursuing his legal rights when he filed his initial application at the BCNR in 1998. Under those circumstances, he should have filed his claim in this Court no later than 2001.

III. Equitable Tolling Does Not Apply

Equitable tolling is technically available in all federal courts, including the Court of Federal Claims. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95-96 (1990). However, the United States Court of Appeals for the Federal Circuit has never held that equitable tolling is available under the Tucker Act Martinez v. United States, 333 F.3d at 1318; Frazer v. United States, 288 F.3d 1347, 1352 (Fed. Cir. 2002). This Court has noted that the availability of equitable tolling is "doubtful given that the limitations period . . . goes to jurisdiction" as a condition to the waiver of sovereign immunity. Holloway v. United States, 60 Fed. Cl. 254, 260, n.12 (2004). See also Irwin, 498 U.S. at 94 (1990) ("[A] condition to the waiver of sovereign immunity . . . must be strictly construed.").

Equitable tolling is narrowly applied in cases against the Government, Irwin, 498 U.S. at 96, and is available in suits against the United States only when Congress has not expressed its intent to the contrary, Bailey v. West, 160 F.3d 1360, 1364 (Fed. Cir. 1998). The United States Court of Appeals for the Federal Circuit has stated that Congress customarily expresses such contrary intent by including more limited tolling provisions in the limitations statute. See Brice v. Sec'y of Health and Human Servs., 240 F.3d 1367, 1373 (Fed. Cir. 2001) ("When an Act includes specific exceptions to a limitations period, we are not inclined to create other exceptions not specified by Congress."); Marcinkowsky v. United States, 206 F.3d 1419, 1421-22 (Fed. Cir. 2000) (applied to a tax statute of limitations); RHI Holdings, Inc. v. United States, 142 F.3d 1459, 1462 (Fed. Cir. 1998) (prescription of a method for extending the statute of limitations in the statute "strongly implies that there are no other exceptions to the statutory period"). The Tucker Act, of course, contains a limited tolling provision, and this Court has noted that

equitable tolling is unavailable under the Tucker Act because "the very language of § 2501 itself indicates a contrary congressional intent to allow tolling [because it] contains explicit exceptions to its basic time limits, and those specific exceptions simply do not include a provision for equitable tolling." Holloway, 60 Fed. Cl. at 260, n.12 (citing United States v. Brockamp, 519 U.S. 347, 351-52 (1997)); compare with Bailey, 160 F.3d at 1365-66 (finding equitable tolling in part because the statute did "not provide its own exceptions to the general rule" and because the limitations period was triggered by a fixed "mailing date" rather than when knowledge of a claim existed). With respect to 28 U.S.C. § 2501, congressional intent is clear: equitable tolling is not available.

Even if the Tucker Act's statute of limitations could be equitably tolled, it would only be available in extremely narrow circumstances, none of which are present here. The United States Supreme Court has "allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." Irwin, 498 U.S. at 96. The United States Court of Appeals for the Federal Circuit has also held that "mental illness can justify equitable tolling." Barrett v. Principi, 363 F.3d 1316, 1318 (Fed. Cir. 2004).

For the reasons discussed with respect to statutory tolling, above, the "mental illness" basis for equitable tolling is unavailable to Mr. Lockwood -- he simply cannot meet his high burden of proof in light of the admissions made in the allegations of his complaint. See Barrett, 363 F.3d at 1320-21 (adopting and reciting standards set by other circuit courts regarding the narrow application of the "mental illness" basis for equitable tolling).

Mr. Lockwood has also not been pursuing his judicial remedies with defective pleadings for the past 28 years. He may argue that he has been pursuing his judicial remedies before the BCNR, but those efforts began only 8 years ago -- still 20 years beyond the expiration of the statute of limitations. Moreover, as explained above, the law clearly provides that applications to a military correction board do not toll the statute of limitations. Friedman, 310 F.2d at 390, 396-98 (1962); Hurick, 782 F.2d at 987. Even if Mr. Lockwood honestly believed that he was supposed to pursue his claim at the BCNR before filing in this Court, that is not a basis for tolling the statute. See Bouley, By and Through Collier v. Sec'y of Health & Human Svcs., 37 Fed. Cl. 227, 231 (1997) ("ignorance of the law is not a ground for tolling the statute of limitations").

Finally, there are no allegations and there is no evidence that the Government has somehow tricked Mr. Lockwood into sitting on his rights for the last three decades.

## CONCLUSION

For these reasons, we respectfully request the Court to dismiss the complaint for lack of subject matter jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

/s/ Bryant G. Snee
BRYANT G. SNEE
Deputy Director

OF COUNSEL:

LT KATHERINE PASIETA
United States Navy
Office of the Judge Advocate General
General Litigation

/s/ Devin A. Wolak
DEVIN A. WOLAK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L St., N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tel. (202) 616-0170
Fax. (202) 514-8624

June 22, 2007

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on June 22, 2007, a copy of the foregoing "Motion to Dismiss" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Devin A. Wolak
DEVIN A. WOLAK