# In the United States Court of Federal Claims

**No. 06-543C**
**Filed: June 5, 2008**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | | |
| **BRYCE F. LOCKWOOD,** | * | |
| | * | |
| **Plaintiff,** | * | **Jurisdiction; Military Pay;** |
| **v.** | * | **Disability Retirement Benefits;** |
| | * | **Statute of Limitations; Equitable** |
| **UNITED STATES,** | * | **Tolling.** |
| | * | |
| | * | |
| **Defendant.** | * | |
| * * * * * * * * * * * * * * | | |

**William J. Kenney,** Washington, D.C., for plaintiff.

**Devin A. Wolak**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were **Jeanne Davidson**, Director, and **Bryant G. Snee**, Deputy Director, Commercial Litigation Branch. Of counsel, **Lieutenant Katherine Pasieta**, Office of the Judge Advocate General, United States Navy.

## O P I N I O N

**HORN, J.**

## FINDINGS OF FACT

Plaintiff seeks to have his military service record corrected to reflect a medical disability retirement based on a claim that he suffered from undiagnosed, post traumatic stress disorder (PTSD) at the time of his separation from the United States Marine Corps. Plaintiff also seeks to have his service record corrected to reflect a 70 percent disability rating from the date of his discharge, June 30, 1972. Defendant moves for dismissal of the complaint asserting a lack of subject matter jurisdiction. Defendant contends that the claim is barred by the statute of limitations and that no basis to toll the statute can be established.

The plaintiff, Bryce F. Lockwood, served in the United States Marine Corps from April 1, 1959[1] through June 30, 1972, during which time he received numerous awards for his service. On June 8, 1967, plaintiff was serving aboard the U.S.S. Liberty when the ship was attacked by Israeli air and naval forces. As a result of the attack, Mr. Lockwood was injured, as indicated in both his Silver Star award citation and his military medical treatment record for June 9, 1967. The June 9, 1967 medical record indicated Mr. Lockwood's injuries as "wound, shrapnel, frontal scalp," and "flash burns, 1st and 2d degree, face and scalp."

After more than twelve years of service, Mr. Lockwood received a Medical Evaluation Board (MEB) on June 30, 1971, which established a diagnosis of "arthralgia [joint pain], underlying etiology not determined at present," incurred in the line of duty. Although it was determined that this condition might be permanent, Mr. Lockwood was found fit to return to duty.

On April 14, 1972, not quite five years following the attack on the Liberty, a Physical Evaluation Board (PEB) found Mr. Lockwood to be disabled and unfit for duty due to a diagnosis of "[a]rthralgia[] with underlying etiology not determined at present." No psychological disability, including no finding of PTSD-type symptoms, was indicated in the report of the 1972 PEB. On June 1, 1972, plaintiff reported symptoms, including stiffness, extreme fatigue, anxiety and depression. Plaintiff's service medical record indicated that the latter two symptoms, anxiety and depression, were assessed as related to his impending separation from the Marine Corps. Mr. Lockwood was assigned a disability rating of 20 percent for arthralgia and discharged from the Marine Corps on June 30, 1972.[2] Mr. Lockwood did not appeal the recommendations of the PEB. At the time of his discharge, Mr. Lockwood received disability severance pay of $15,710.84.

More than twenty-six years after he was discharged from the military, Mr. Lockwood submitted an application to the Board for Correction of Naval Records (BCNR) on October 1, 1998. In the application, he requested a 60 percent disability rating for PTSD based on his service on the U.S.S. Liberty and subsequent service in Vietnam. His request was denied on October 11, 2000. On November 16, 2001, Mr. Lockwood submitted a motion to reopen his application to the BCNR. Sometime late in 2005, Mr. Lockwood filed a second motion to reopen with the BCNR. Each motion to reopen contained numerous affidavits in support of Mr. Lockwood's application and

---

[1] Plaintiff's complaint reflects a service entry date of April 15, 1959, although documents in the Administrative Record indicate his entry into the service was April 1, 1959.

[2] In accordance with 10 U.S.C. § 1203 (2000), servicemembers assessed as unfit for service with less than 20 years of military service who are assigned a disability rating of 20 percent or less by a separation board are given severance pay instead of being placed either on the Temporary or Permanent Disability Retirement List. Those with a rating of 30 percent or greater are placed on either the Temporary or Permanent Disability Retirement Lists and, based on their condition, receive disability retirement pay and benefits.

requested both a PTSD determination and a related change in his retirement disability rating. Both of Mr. Lockwood's applications to reopen his case at the BCNR were denied on April 11, 2006. The BCNR concluded that Mr. Lockwood "ha[d] not demonstrated that [he] suffered from post traumatic stress disorder prior to [his 1972] discharge."

On October 20, 1998, Mr. Lockwood submitted an application for veteran's benefits to the United States Department of Veterans Affairs (VA). Mr. Lockwood was granted a 30 percent disability rating for what was assessed to be a service-connected disability of post traumatic stress disorder, 10 percent for tinnitus (a ringing or noise in the ears usually caused by damage to the inner ear), and denied disability for a variety of other assorted ailments.

In his complaint to this court, plaintiff seeks a judgment for back military disability retirement pay, correction of plaintiff's military records to reflect placement on the Temporary Disability Retired List on July 1, 1972 with a disability rating of 70 percent, with disability retirement pay at the same rating, and attorney's fees, medical consultant fees, costs and expenses.

## DISCUSSION

Plaintiff claims jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (2000), and a number of other Acts, including 37 U.S.C. § 204 (2000), 10 U.S.C. § 1201 (2000), and 10 U.S.C. § 1551 (2000), et seq., 5 U.S.C. § 701 (2000), as well as the Fifth Amendment to the United States Constitution. Although not all of plaintiff's citations are appropriate, jurisdiction to review plaintiff's claim is proper in this court pursuant to 28 U.S.C. § 1491, the Tucker Act, and 10 U.S.C. § 1201, the Military Disability Retirement statute. See Chambers v. United States, 417 F.3d 1218, 1224 (Fed. Cir.), cert. denied, 546 U.S. 1066 (2005).

The Tucker Act authorizes claims for monetary relief against the United States to be brought in the United States Court of Federal Claims, as follows:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).

As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims, (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made

to the government or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 537 U.S. 488, 503, n.10 (2003); United States v. Testan, 424 U.S. 392, 400, reh'g denied, 425 U.S. 957 (1976) (citing Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605-06, 372 F.2d 1002, 1009 (1967)); Collins v. United States, 67 F.3d 284, 286 (Fed. Cir.), reh'g denied (1995); see also Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); Stinson, Lyons & Bustamante, P.A. v. United States, 33 Fed. Cl. 474, 478 (1995), aff'd, 79 F.3d 136 (Fed. Cir. 1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." INS v. St. Cyr, 533 U.S. 289, 299 n.10, (2001); United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992); Ins. Co. of the West v. United States, 243 F.3d 1367, 1372 (Fed. Cir.), reh'g and reh'g en banc denied (2001); Saraco v. United States, 61 F.3d 863, 864 (Fed. Cir. 1995) (citing United States v. King, 395 U.S. 1, 4 (1969)), cert. denied, 517 U.S. 1166 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims, "it does not create any substantive right enforceable against the United States for money damages." United States v. Mitchell, 445 U.S. 535, 538 (quoting United States v. Testan, 424 U.S. at 398-99), reh'g denied, 446 U.S. 992 (1980); Martinez v. United States, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (en banc), cert. denied, 540 U.S. 1177 (2004); White Mountain Apache Tribe v. United States, 249 F.3d 1364, 1372 (Fed. Cir. 2001), aff'd, 537 U.S. 465 (2003); Cyprus Amax Coal Co. v. United States, 205 F.3d 1369, 1373 (Fed. Cir. 2000), cert. denied, 532 U.S. 1065 (2001); New York Life Ins. Co. v. United States, 118 F.3d 1553, 1555-56 (Fed. Cir. 1997), cert. denied, 523 U.S. 1094 (1998); United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc), cert. denied, 465 U.S. 1065 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. United States v. Mitchell, 445 U.S. at 538. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" White Mountain Apache Tribe v. United States, 249 F.3d at 1372 (quoting United States v. Mitchell, 463 U.S. 206, 216-17 (1983)); United States v. Testan, 424 U.S. at 400; Tippett v. United States, 185 F.3d 1250, 1254 (Fed. Cir. 1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States." (quoting James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998), reh'g denied (1999)); Doe v. United States, 100 F.3d 1576, 1579 (Fed. Cir. 1996), reh'g denied and en banc suggestion declined (1997); Eastport Steamship Corp. v. United States, 178 Ct. Cl. at 607, 372 F.2d at 1009.

In response to plaintiff's complaint, defendant filed a motion to dismiss. Defendant asserts that plaintiff's claim for military disability retirement and attendant pay and benefits accrued more than six years prior to the filing of his lawsuit, the statutory limit for bringing claims in this court under the Tucker Act. See 28 U.S.C. § 2501 (2000). Defendant asserts plaintiff's claim began to accrue following plaintiff's April 14, 1972 Physical Evaluation Board (PEB), the first competent board to review plaintiff's

disability status. Plaintiff disagrees. Plaintiff argues his claim did not accrue until after the BCNR determination negative to Mr. Lockwood on October 11, 2000. Plaintiff also claims that the statute of limitations should not begin to run until the servicemember knows the facts of his diagnosis and that the diagnosis is disabling. If, however, the court determines that plaintiff's earlier PEB or discharge date fixed the date when the statute began to run, then plaintiff asserts that the statute of limitations, nevertheless, should be equitably estopped, and the plaintiff's claim in this court should be considered timely based on alleged government misconduct.

Suits against the United States are subject to a six-year statute of limitations pursuant to 28 U.S.C. § 2501. This statute sets an express limitation on the jurisdiction granted to this court under the Tucker Act. See Martinez v. United States, 333 F.3d at 1304; Franconia Assocs. v. United States, 240 F.3d 1358, 1362 (Fed. Cir. 2001), rev'd on other grounds, 536 U.S. 129 (2002); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1376-77 (Fed. Cir. 1998); Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d 1449, 1454 (Fed. Cir. 1997); Hart v. United States, 910 F.2d 815, 817 (Fed. Cir. 1990) (citing Soriano v. United States, 352 U.S. 270, 273-74 (1957)); Holloway v. United States, 60 Fed. Cl. 254, 256 (2004), aff'd, 143 Fed. Appx. 313 (Fed. Cir.), cert. denied, 546 U.S. 876 (2005). The six-year time bar on actions against the United States is "jurisdictional, because filing within the six-year period was a condition of the waiver of sovereign immunity in the Tucker Act, 28 U.S.C. § 1491(a)(1)." Caguas Cent. Fed. Sav. Bank v. United States, 215 F.3d 1304, 1310 (Fed. Cir. 2000), cert. denied, 531 U.S. 1070 (2001); see also Block v. North Dakota, 461 U.S. 273, 287 (1983); Martinez v. United States, 333 F.3d at 1316; Frazer v. United States, 288 F.3d 1347, 1351 (Fed. Cir. 2002); Brown Park Estates-Fairfield Dev. Co. v. United States, 127 F.3d at 1454; Holloway v. United States, 60 Fed. Cl. at 256. Because the statute of limitations affects this court's subject matter jurisdiction, the requirement is strictly construed. Alder Terrace, Inc. v. United States, 161 F.3d at 1376-77; Holloway v. United States, 60 Fed. Cl. at 256; Martinez v. United States, 48 Fed. Cl. 851, 857 (2001), aff'd in part, 281 F.3d 1376 (Fed. Cir.), reh'g denied (2002); Entines v. United States, 39 Fed. Cl. 673, 678 (1997), aff'd, 185 F.3d 881 (Fed. Cir.) (table), cert. denied, 526 U.S. 1117 (1999); McDonald v. United States, 37 Fed. Cl. 110, 113 (1997), aff'd, 135 F.3d 778 (Fed. Cir. 1998) (table). The start date to begin a statute of limitations calculation for a claim against the United States is "when 'all events have occurred to fix the Government's alleged liability, entitling the claimant to demand payment . . . .'" Martinez v. United States, 333 F.3d at 1303 (quoting Nager Elec. Co. v. United States, 177 Ct. Cl. 234, 240, 368 F.2d 847, 851 (1966), reh'g denied, 184 Ct. Cl. 390, 396 F.2d 977 (1968)); Franconia Assocs. v. United States, 240 F.3d at 1362; Alder Terrace, Inc. v. United States, 161 F.3d at 1377; Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988); Lins v. United States, 231 Ct. Cl. 579, 582, 688 F.2d 784, 786 (1982), cert. denied, 459 U.S. 1147 (1983); Oceanic Steamship Co. v. United States, 165 Ct. Cl. 217, 225 (1964); Holloway v. United States, 60 Fed. Cl. at 256. The statute of limitations for a particular plaintiff begins to "run from the date the plaintiff 'knew or should have known of the claim.'" Oja v. Dep't of Army, 405 F.3d 1349, 1358 (Fed. Cir.) (quoting United States v. Beggerly, 524 U.S. 38, 48-49 (1998)), reh'g and reh'g en banc denied (2005).

As the plaintiff, Mr. Lockwood has the burden of proving that this court has subject matter jurisdiction, including that his claim is timely. See McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936); Sanders v. United States, 252 F.3d 1329, 1333 (Fed. Cir. 2001); Alder Terrace Inc. v. United States, 161 F.3d at 1376-77; Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988).

The United States Court of Appeals for the Federal Circuit summarized the rules for claims accrual in military pay cases in Chambers v. United States. The Federal Circuit noted the distinction which exists between wrongful discharge cases and disability cases. "A claim for wrongful discharge accrues upon the service member's discharge rather than upon the final decision of the appropriate military corrections board." Chambers v. United States, 417 F.3d at 1223 (citing Martinez v. United States, 333 F.3d at 1303-04). Wrongful discharge cases are brought pursuant to the money-mandating Military Pay Act, 37 U.S.C. § 204, under which resort to a correction board is not mandatory, but permissive. Therefore, application to a correction board is not required before challenging a wrongful discharge in the United States Court of Federal Claims, generating a date-of-discharge rule for the start of accrual of the statute of limitations in wrongful discharge cases. Chambers v. United States, 417 F.3d at 1224.

In contrast, claims of entitlement to disability retirement pay generally do not start to accrue until the appropriate military board denies the claim in a final decision, or refuses to hear the claim. Id. (citing Real v. United States, 906 F.2d 1557, 1560 (Fed. Cir. 1990)). This rule is driven by the money-mandating statute for disability retirement cases, 10 U.S.C. § 1201, which provides for military boards to determine whether a service member should be retired for disability. Chambers v. United States, 417 F.3d at 1225 (citing Friedman v. United States, 159 Ct. Cl. 1, 13, 310 F.2d 381, 389 (1962), cert. denied sub nom. Lipp v. United States, 373 U.S. 932 (1963)).[3] "In other words, the

[3] The Friedman court wrote:

> The rationale of all the cases, taken together, is that Congress has given the function of deciding entitlement to disability retirement to the Secretary, acting with or through a statutory board, and that the claim does not accrue until final action on the basis of the determination of the first competent board to decide. As this court has said, "All of these boards, the Retiring Board, the Disability Review Board, and the Board for Correction of Military Records act only in an advisory capacity to the Secretary of War. If his decision on the retirement rights of an officer is alleged to have been arbitrary, then the officer's right to come to the court for redress accrues as soon as the arbitrary decision is rendered." Girault v. United States, 133 Ct. Cl. 135, 144, 135 F. Supp. 521, 526 [1955].

Friedman v. United States 159 Ct. Cl. at 18, 310 F.2d at 392; see also Chambers v. United States, 417 F.3d at 1224-26.

Court of Federal Claims has no jurisdiction over disability retirement claims until a military board evaluates a service member's entitlement to such retirement in the first instance." Chambers v. United States, 417 F.3d at 1225.

The Federal Circuit in Chambers continued, "where the claimant 'has not had or sought a Retiring Board,[4] his claim does not accrue until final action by the Correction Board (which in that instance stands in the place of the Retiring Board as the proper tribunal to determine eligibility for disability retirement).'" Id. (quoting Friedman v. United States, 159 Ct. Cl. at 24, 310 F.2d at 396). The Federal Circuit characterizes this as the "first competent board rule" of Friedman. Chambers v. United States, 417 F.3d at 1225.

The Federal Circuit in Chambers characterized the rule in Friedman as the "general rule," id. at 1226-27, and then considered an exception to the general rule addressed in the Real case, as to "'[w]hether the veteran's knowledge of the existence and extent of his condition at the time of his discharge was sufficient to justify concluding that he waived the right to board review of the service's finding of fitness by failing to demand a board prior to his discharge . . . .'" Id. at 1226 (quoting Real v. United States, 906 F.2d at 1562). The Federal Circuit in Chambers continued:

> The appropriate inquiry under Real, therefore, is whether at the time of his separation from the Army in 1970, Chambers knew that he was entitled to disability retirement due to a permanent disability that was not a result of his intentional misconduct and was service-connected. We hold that the record is bereft of any evidence that Chambers possessed such knowledge. The medical diagnoses Chambers received prior to discharge – "transient stress reaction," "transient situational stress," and "mild situational anxiety" – all indicated that his condition was minor, temporary, and circumstantial. Nothing in the record indicates that Chambers considered these diagnoses to be erroneous. Chambers also knew that he was returned to regular duty after his brief hospitalizations. Thus, in 1970, he had no basis for concluding the Army erred in finding him fit for duty and hence suitable for discharge. The Real exception does not apply.

Chambers v. United States, 417 F.3d at 1226-27.

In Chambers, the service member was discharged in 1970 with no PEB, and received a final decision denying his disability retirement pay claim from the Army Board for Correction of Military Records (ABCMR) in 2000. Id. at 1220-22. The Federal Circuit in Chambers followed the "general rule" in Friedman, that the cause of action did not accrue until the ABCMR, the first competent board, denied the disability claim in 2000. Id. at 1227.

[4] A footnote in Chambers explains: "A Retiring Board, now called Physical Examination Board or PEB, determines a service member's fitness for duty and entitlement to disability retirement once a Medical Examination Board or MEB finds the soldier does not meet the Army's standards for retention under its regulations."

The facts and result in Chambers are distinguishable from the present case, in that Mr. Lockwood's first competent board was not the Board for Correction of Naval Records (BCNR), which rendered its decision on October 11, 2000, but the PEB, which rendered its decision on April 14, 1972. In contrast, there was no PEB prior to the service member's discharge in Chambers. Id. at 1221.[5]

Nor was there a PEB prior to the service member's discharge in Real. Real v. United States, 906 F.2d at 1559. Furthermore, in order for there to have been a board waiver, the Federal Circuit in Real stated that the service member must "ha[ve] been informed that the failure to demand a board prior to discharge will result in his being ineligible for disability benefits from the service," and with this notice, the service member must still not have sought a board. Id. at 1562 n.6. These are specialized facts, not operative in the present case, because this is a board case, not a board waiver case. The issue presented in both Chambers and Real, whether the service member who did not have a PEB before discharge, nevertheless, waived a PEB under the facts and circumstances of those cases, is not at issue before this court.

The Federal Circuit in Chambers clarified that the Real analysis was limited to a single point in time – the service member's discharge date. "Real thus concerned the service member's knowledge at the time of discharge, not, as here, many years after discharge. Real did not fashion a rule . . . that a service member's claim accrues when he learns of his disabling condition, whether before or after discharge." Chambers v. United States, 417 F.3d at 1226. Neither Chambers nor Real provides authority to ignore the PEB in the present case, nor to ignore the Friedman, first competent board rule.

In the alterative, plaintiff also argues that the statute of limitations should be tolled. Equitable tolling "preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable." United States v. Patterson, 211 F.3d 927, 930 (5th Cir. 2000) (quoting Davis v. Johnson, 158 F.3d 806, 810 (5th Cir. 1998), cert. denied, 526 U.S. 1074 (1999)). The United States Supreme Court, however, has sustained the use of equitable tolling against the government as a defendant, "only sparingly." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990), reh'g denied, 498 U.S. 1075 (1991). For example, the United States Supreme Court "ha[s] allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period or where the complainant has been induced or tricked by his adversary's misconduct into allowing

[5] Mr. Chambers also had a documented history of mental problems throughout the later years of his service and was diagnosed with "transient stress reaction," "'personality pattern disturbance, transient, situational' and prescribed valium" and "'mild situational anxiety' and prescribed Librium," despite being found psychologically normal and medically qualified for discharge. Id. at 1221-22. The Administrative Record for Mr. Lockwood reflects only minor, transitory mental health issues noted on his 1971 MEB report, after which he was found fit for duty. Moreover, there is no indication of mental health issues on his later PEB report, just prior to discharge.

the filing deadline to pass." Id.; see also Martinez v. United States, 333 F.3d at 1318.[6]

The party invoking the doctrine of equitable tolling bears the burden of proof and must demonstrate "rare and exceptional circumstances" warranting application of the equitable tolling doctrine. Felder v. Johnson, 204 F.3d 168, 170-71 (5th Cir.) (quoting Davis v. Johnson, 158 F.3d at 811), cert. denied, 531 U.S. 1035 (2000); see also Fisher v. Johnson, 174 F.3d 710, 714 (5th Cir. 1999), cert. denied, 531 U.S. 1164 (2001); Seattle Audubon Soc'y v. Robertson, 931 F.2d 590, 595 (9th Cir. 1991) (Equitable estoppel may be appropriate when plaintiffs were prevented from asserting their claims by some wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control made it impossible to file the claims on time.), rev'd on other grounds, 503 U.S. 429 (1992); O'Connell v. Sec'y of HHS, 63 Fed. Cl. 49, 63-64 (2004) (citing Irwin v. Dep't of Veterans Affairs, 498 U.S. at 96). Moreover, because equitable tolling is a further waiver of sovereign immunity, each case must be narrowly construed, based on the specific facts and circumstances of the individual case. See United States v. Patterson, 211 F.3d at 931 ("To apply the doctrine of equitable tolling, we look to the facts and circumstances of each case." (quoting Fisher v. Johnson, 174 F.3d at 713)).

Pursuant to 10 U.S.C. § 1201,[7] the Secretary of the relevant military branch of service determines the eligibility of service personnel for retirement pay. "Congress has

[6] As determined by the United States Court of Appeals for the Federal Circuit, Irwin v. Dep't of Veterans Affairs "expands beyond the Title VII context," under which facts it was decided. Bailey v. West, 160 F.3d 1360, 1368 (Fed. Cir. 1998) ("holding that equitable tolling is available to avoid time limitations in the statutory provisions governing veterans benefits."); see also Oja v. Dep't of the Army, 405 F.3d at 1358.

[7] **Sec. 1201. Regulars and members on active duty for more than 30 days: retirement**

(a) RETIREMENT.--Upon a determination by the Secretary concerned that a member described in subsection (c) is unfit to perform the duties of the member's office, grade, rank, or rating because of physical disability incurred while entitled to basic pay or while absent as described in subsection (c)(3), the Secretary may retire the member, with retired pay computed under section 1401 of this title, if the Secretary also makes the determinations with respect to the member and that disability specified in subsection (b).

(b) REQUIRED DETERMINATIONS OF DISABILITY.--Determinations referred to in subsection (a) are determinations by the Secretary that--(1) based upon accepted medical principles, the disability is of a permanent nature and stable; (2) the disability is not the result of the member's intentional misconduct or willful neglect, and was not incurred during a period of unauthorized absence; and (3) either--

(A) the member has at least 20 years of service computed under section 1208 of this title; or

(B) the disability is at least 30 percent under the standard schedule of rating disabilities in use by the Department of Veterans Affairs at the time of the determination; and either—

entrusted the military boards with the task of determining whether a serviceman should be retired for disability and therefore . . . no cause of action arises (and the statute of limitations does not run) until a proper board has acted or declined to act." Chambers v. United States, 417 F.3d at 1224 (quoting Friedman v. United States, 159 Ct. Cl. at 18, 310 F.2d at 389) (omission in original). In this regard, the United States Supreme Court has stated that, "judges are not given the task of running the [Service branch] . . . [T]he military constitutes a specialized community governed by a separate discipline from that of the civilian." Orloff v. Willoughby, 345 U.S. 83, 93-94, reh'g denied, 345 U.S. 931 (1953); see also Porter v. United States, 163 F.3d 1304, 1316 (Fed. Cir. 1998), cert. denied, 528 U.S. 809 (1999). Moreover, "[j]udicial deference to administrative decisions of fitness for duty of service members is and of right should be the norm." Maier v. Orr, 754 F.2d 973, 984, reh'g denied, 758 F.2d 1578 (Fed. Cir. 1985).

As noted above, decisions of the United States Court of Appeals for the Federal Circuit, and its predecessor, the United States Court of Claims, have indicated that claim accrual is defined by the first competent board rule of Friedman. See Chambers v. United States, 417 F.3d at 1218; Friedman v. United States, 159 Ct. Cl. at 24, 310 F.2d at 396. Mr. Lockwood was afforded a PEB, a competent Board within the meaning of the first competent board rule, on April 14, 1972, just prior to his separation from the service. Federal Circuit case law starts the counting of the statute of limitations period in such situations from the servicemember's separation from the military, without disability retirement pay, which for Mr. Lockwood was on June 30, 1972. See Chambers v. United States, 417 F.3d at 1225 (noting that when the service member is afforded a is PEB "at the time of discharge," then "the limitations period begins to run upon discharge."); Real v. United States, 906 F.2d at 1560. The statute of limitations on Mr. Lockwood's retirement disability claim for PTSD, or PTSD symptoms/manifestations, therefore, had run on June 30, 1978.

---

(i) the member has at least eight years of service computed under section 1208 of this title;

(ii) the disability is the proximate result of performing active duty;

(iii) the disability was incurred in line of duty in time of war or national emergency;

or (iv) the disability was incurred in line of duty after September 14, 1978.

(c) ELIGIBLE MEMBERS.--This section and sections 1202 and 1203 of this title apply to the following members:

(1) A member of a regular component of the armed forces entitled to basic pay.

(2) Any other member of the armed forces entitled to basic pay who has been called or ordered to active duty (other than for training under section 10148(a) of this title) for a period of more than 30 days.

(3) Any other member of the armed forces who is on active duty but is not entitled to basic pay by reason of section 502(b) of title 37 due to authorized absence (A) to participate in an educational program, or (B) for an emergency purpose, as determined by the Secretary concerned.

10 U.S.C. § 1201.

Although plaintiff received a 30 percent disability rating for PTSD from the VA on January 31, 2000, this does not dictate a similar PEB result in 1972, or a similar disability rating for retirement purposes. Both the Department of Veterans Affairs and the military service branches rely on the Veterans Administration Schedule for Rating Disabilities (VASRD), however, they do so in different ways. The military uses the VASRD, "to determine fitness for performing the duties of office, grade, and rank, whereas the VA uses the VASRD to determine the disability ratings based on an evaluation of the individual's capacity to function and perform tasks in the civilian world." Haskins v. United States, 51 Fed. Cl. 818, 826 (2002). Although a VA rating decision may be relevant to consideration of an appropriate disability rating, it is not binding on the service branch. See Chambers v. United States, 417 F.3d at 1225; Bennett v. United States, 200 Ct. Cl. 635, 643-44 (1973); Unterberg v. United States, 188 Ct. Cl. 994, 1003, 412 F.2d 1341, 1346 (1969); Williams v. United States, 186 Ct. Cl. 611, 614, 405 F.2d 890, 891-92, cert. denied, 396 U.S. 966 (1969), reh'g denied, 396 U.S. 1047 (1970). Moreover, retroactive application of a VA diagnosis and attendant disability rating, to a much earlier PEB disability assessment for retirement purposes, which had not identified any psychological symptoms, is not warranted.

Mr. Lockwood is a recognized hero and served his nation admirably. The court does not wish to minimize the seriousness of any issues with which the plaintiff has to contend. Fortunately, however, not every veteran who serves in a theatre of hostile operation leaves such assignments, or the military, manifesting signs of PTSD or other physical or psychological, medical symptoms. Mr. Lockwood's medical examinations and records, including the MEB and PEB reviews, do not establish or even suggest that at the time of his discharge plaintiff presented the symptoms of PTSD (although PTSD only became identified as a recognized psychological syndrome well after plaintiff's 1972 retirement).[8] Moreover, Mr. Lockwood did not seek to have his medical records amended until October 1, 1998 when he applied to the BCNR to have his military records corrected, even though the record discloses that he was diagnosed with PTSD in 1997.[9]

---

[8] According to the United States Court of Appeals for the Federal Circuit, PTSD was not a medically recognized diagnosis prior to 1980 when it was first included in the American Psychiatric Association's Diagnostic and Statistical Manual of Medical Disorders. See Real v. United States, 906 F.2d at 1560.

[9] In a July 30, 1997 meeting with Missouri Licensed Psychologist, Dr. John D. Greenhall, Jr., Psy.D., Dr. Greenhall indicated in his progress notes for Mr. Lockwood that, "Bryce also elated he has a meeting on the 16th with his attorney and a couple of other professionals, including a psychologist, to discuss his pending request for disability. [I] did not comment on this since [I am] fairly certain Bryce is aware he does not meet the criteria for Post Traumatic Stress Disorder and [I] would have to testify to same. As seemingly an afterthought towards the end of the session, Bryce commented on his last assignment and stated he hadn't had time to consider same. Indeed, Bryce seemed to be having difficulty saying good-bye and commented he would call for his next appointment although he'd always made his appointment prior to departure. [I am] comfortable if Bryce chooses to self-discharge since there appears to be no diagnosis

As part of his claim, plaintiff attempts to argue that to start the statute of limitations running a plaintiff must know the facts of his diagnosis and know that the diagnosis is disabling, raising the issue of his 1997 diagnosis of PTSD and the identification of PTSD as a syndrome only in 1980, both well after Mr. Lockwood's PEB and discharge in 1972. The Federal Circuit declined to extend the accrual of a claim until a servicemember "learns of his disabling condition," although in the Chambers case, the court indicated that the symptoms could be related to PTSD. Chambers v. United States, 417 F.3d at 1226-27. Although the court allowed Mr. Chambers to proceed with his cause of action, the Court of Appeals for the Federal Circuit stated that Mr. Chambers, "cannot now complain that the Army failed to diagnose him in 1970 with a psychological condition unknown until 1980." Chambers v. United States, 417 F.3d at 1227-28. After reviewing all the facts, the Chambers court upheld the Board of Corrections' denial of Mr. Chambers' claim. Id. at 1228.

In plaintiff's case, without documented medical evidence of psychological distress severe enough to cause a finding of disability at the time of his PEB and disability discharge, there is no basis to retroactively attach the PTSD label to his case. As noted, the VA 30 percent disability finding for PTSD is related to his "capacity to function and perform tasks in the civilian world." Haskins v. United States, 51 Fed. Cl. at 826. In 1972, the PEB found a 20 percent disability for arthralgia (joint pain), but made no mention of any psychological syndrome or symptoms to suggest a determination of PTSD. Therefore, barring equitable tolling, the court finds that Mr. Lockwood's claim began to accrue on June 30, 1972, after his PEB and discharge from the military.

In this case, Mr. Lockwood also advances the theory of equitable tolling, claiming that misconduct by the Navy, namely a silencing order and other supposed official orders limiting what U.S.S. Liberty personnel could say about the 1967 attack on the ship, constitutes a basis for tolling the statue of limitations. No such claim would attach to his service in Vietnam. There is insufficient evidence, however, to sustain tolling on the basis of the facts in the record in plaintiff's case. Mr. Lockwood was physically examined just prior to his discharge and received both an MEB and a PEB. Following an examination, the PEB did not document or even mention an indication of a mental disability in Mr. Lockwood's medical profile, despite the notation in plaintiff's medical records reporting symptoms of fatigue, anxiety and depression. Furthermore, there is no evidence in the record that the Navy mischaracterized Mr. Lockwood's medical condition at any point. Nor is there any evidence that the Navy sought to deceive Mr. Lockwood regarding his rights to seek medical treatment, a medical disability retirement, or that he was entitled to appeal the 1972 PEB disability determination and subsequent separation pay, which he accepted, instead of medical disability retirement

---

at this time." On August 19-20, 1997, Mr. Lockwood was evaluated by John M. Smothers, Ph.D., ABPP. In a December 11, 1997 letter to plaintiff's attorney, Dr. Smothers assessed Mr. Lockwood as meeting the "diagnostic criteria for Post Traumatic Stress Disorder," despite otherwise "operating in the superior range of intellectual functioning."

at the time of his discharge. The only indication offered by the plaintiff in his complaint regarding his hesitancy to seek medical attention for psychological distress (or PTSD) was an allegation in his complaint that he relied on discussions he had with fellow servicemembers, who suggested that Mr. Lockwood should not seek such medical attention.

Courts have been reluctant to invoke the doctrine of equitable tolling when plaintiffs have failed to exercise due diligence in order to preserve legal rights. This plaintiff did not appeal his PEB decision, nor assert at the time of his discharge that he was suffering from any psychological distress. Furthermore, he accepted the severance pay awarded him as a result of his established physical disability of arthralgia at the time. The record before this court also indicates that he was diagnosed with PTSD in 1997, yet he first sought a correction to his military records on an assertion of PTSD disability on October 1, 1998. Consequently, plaintiff presents insufficient evidence for the court to invoke the rarely utilized doctrine of equitable tolling.

**CONCLUSION**

At the time of his discharge, plaintiff was determined unfit for service due to a diagnosis of arthralgia and given a 20 percent disability rating for separation purposes. There is no documented medical evidence that psychological impairment or symptoms, of what was later defined as PTSD, were present at the time of plaintiff's discharge. Plaintiff did not appeal the 20 percent disability rating for arthralgia at the time of his discharge and accepted the severance payment upon his discharge. No case has been documented for equitable tolling. Therefore, defendant's motion to dismiss is **GRANTED** and plaintiff's complaint is **DISMISSED**, with prejudice. The clerk's office shall enter **JUDGMENT** consistent with this Order. No costs.

**IT IS SO ORDERED.**

/s/ Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**